**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori E. Didway, ) | No. CV-05-3395-PHX-FJM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff brought this action seeking review of the Social Security Administration's decision that plaintiff is not eligible for benefits after November 26, 2003. The court has before it plaintiff's motion for summary judgment (doc. 14), defendant's response (doc. 19) and cross-motion for summary judgment (doc. 20), and plaintiff's response and reply (doc. 25).

**I**

Plaintiff filed an application for disability benefits on August 9, 2002, alleging that she became disabled on February 21, 2002, based on a combination of physical and psychological impairments, including severe degenerative disease with neck pain, migraine headaches, fibromyalgia, poor memory and concentration, anxiety and depression. Following a hearing on February 1, 2005, the Administrative Law Judge (ALJ) issued a

1  decision finding plaintiff disabled for a closed period of time, from February 21, 2002
2  through November 26, 2003. Tr. at 14. The ALJ concluded that beginning November 26,
3  2003, the plaintiff exhibited the ability to return to light work and was no longer disabled
4  within the meaning of the Social Security Act. Id. The decision became the final decision
5  of the Commissioner when the Appeals Council denied plaintiff's request for review.
6  Plaintiff contends that her disability extends beyond November 26, 2003, and therefore she
7  filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

8        A district court may set aside a denial of benefits "only if it is not supported by
9  substantial evidence or if it is based on legal error." Thomas v. Barnhart, 278 F.3d 947, 954
10 (9th Cir. 2002). Substantial evidence is "relevant evidence which, considering the record as
11 a whole, a reasonable person might accept as adequate to support a conclusion. Where the
12 evidence is susceptible to more than one rational interpretation, one of which supports the
13 ALJ's decision, the ALJ's conclusion must be upheld." Id. (citation omitted).

14 **II**

15       Plaintiff first argues that the ALJ did not properly consider the combination of
16 impairments at step three of the sequential evaluation process when he concluded that the
17 impairments are not severe enough to meet or medically equal one of the impairments listed
18 in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At step three, if the medical severity of a claimant's
19 impairments meet or equal one of the listings in Appendix 1 of the regulations, then the
20 claimant is conclusively disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

21       Plaintiff argues that the ALJ erred in concluding that plaintiff did not meet the
22 requirements of Listing 12.05C, entitled "Mental Retardation." In order to meet Listing
23 12.05C, a claimant must have a valid IQ below 70 and another physical or other mental
24 impairment that imposes additional and significant work-related limitations. The evidence
25 shows that plaintiff's full scale IQ is 75. Therefore, from the face of the regulation, plaintiff
26 cannot meet Listing 12.05C because her IQ is greater than 70.

27       Plaintiff, however, relies on Program Operation Manual System ("POMS") section
28 DI 24515.056(D)(1)(c), an internal Social Security document, which provides that "slightly

higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination." Plaintiff contends that her full scale IQ is 75, and that she suffers from affective disorder, anxiety disorder, cervical spine disorder, fibromyalgia and a history of headaches, and therefore she fits within the description set forth in the POMS. But this provision is contrary to the plain language of the regulation. The POMS, while persuasive authority, was promulgated "without Congressional authorization or the protections surrounding formal rule making" and does not have the force of law. Briggs v. Sullivan, 886 F.2d 1132, 1144 (9th Cir. 1989); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Policies authorized by the POMS that "go beyond the SSA's governing statute and regulations" are not valid. Warre, 439 F.3d at 1005 n.3 (citing Briggs, 886 F.2d at 1144). These internal guidelines cannot raise the bar in the regulations from 70 to 75. The ALJ did not err at step three of the sequential evaluation process.

### III

Plaintiff also argues that the ALJ failed to give proper weight to the opinion of Dr. Williams, her treating physician. Because the medical opinion of a claimant's treating physician is entitled to special weight, an ALJ may reject controverted testimony of a treating physician only if he provides "specific and legitimate reasons supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (quotation omitted). In making his determination, the ALJ will consider the factors set forth in 20 C.F.R. § 404.1527(d).[1]

The ALJ concluded that plaintiff was disabled from her alleged onset date until November 26, 2003, acknowledging that her neck pain was serious enough to require surgery on June 20, 2003. However, based on the record as a whole, the ALJ concluded that

---

[1] Plaintiff contends that the ALJ's failure to discuss each of the factors set forth in 20 C.F.R. § 404.1527(d) is legal error. But plaintiff has cited no authority (nor have we found any) to support the proposition that the ALJ must independently and expressly discuss each of the factors for his consideration of a treating source opinion to pass muster.

- 3 -

1 following surgery plaintiff improved to the point that she could perform sedentary and light
2 work. Tr. at 21. This conclusion conflicts with Dr. Williams' June 3, 2004 opinion that
3 plaintiff could sit, stand and walk less than one hour each in a workday and lift and carry less
4 than ten pounds. Tr. at 163. The ALJ's conclusion also conflicts with a January 29, 2004
5 letter from a physician's assistant in Dr. Williams' office, stating that plaintiff was "100%
6 disabled."[2] Tr. at 165.

The ALJ discounted Dr. Williams' opinion because it was inconsistent with the
8 remainder of the record. For example, Dr. Timothy Harrington, plaintiff's surgeon, reported
9 that following surgery she was "back to normal" neurologically, her X-rays looked "quite
10 good," and her neck had a "good range of motion." Tr. at 16, 136, 138. He recommended
11 only massage therapy for plaintiff's complaints of pain and stiffness and an evaluation for her
12 headaches. Tr. at 136, 138. On November 26, 2003, consultative physician, Malcom
13 McPhee, M.D., concluded that plaintiff was capable of performing light work, lifting 20
14 pounds occasionally, 10 pounds frequently, standing or walking 6 hours in an 8-hour day,
15 sitting for 6 hours with changes in position briefly every hour because of her subjective pain.
16 Tr. at 145. On January 8, 2004, the state agency reviewing physician also opined that
17 plaintiff was capable of performing light work. Tr. at 17, 198-205.

Moreover, the treatment notes from Dr. Williams' clinic, Squaw Peak Family
19 Physicians, did not show significant treatment for fibromyalgia, headache or joint pain after
20 November 26, 2003. Tr. at 267-72. In fact, plaintiff was often treated for conditions
21 unrelated to her disability claim. None of the treatment notes from the Squaw Peak clinic are
22 indicative of total disability. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)
23 (treating physician's opinion properly rejected where treatment notes failed to present "the
24 sort of description and recommendations one would expect to accompany a finding that [the
25 claimant] was totally disabled under the Act").

---

[2]Though the January 29, 2004 letter contains Dr. Williams' name, it is only signed by a physician's assistant.

- 4 -

The ALJ also considered plaintiff's mental condition and noted that Dr. John Storie made findings indicating that plaintiff could perform more than simple work. Tr. at 155. On January 9, 2004, a state agency physician concluded that plaintiff was not significantly limited by any mental impairment. Tr. at 194-96. The ALJ disregarded the conclusions of Kathleen Smerko, a psychiatric nurse practitioner, who submitted inconsistent mental impairment reports. On December 4, 2002, Ms. Smerko opined that there were no limitations whatsoever. Tr. at 159-61. On April 8, 2004, Smerko's report indicated moderately severe limitation in the ability to understand, carry out, and remember instruction and severe impairment in the ability to deal with customary work pressures. Tr. at 156-57. Smerko's January 20, 2005 report indicated more moderate limitations. Tr. at 240-41. Based on the significant inconsistencies among the reports, without any objective basis for the discrepancies, the ALJ properly disregarded Smerko's conclusions entirely.[3] Tr. at 20.

Based on the foregoing, we conclude that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record to reject the opinion of plaintiff's treating physician.

**IV**

We next consider whether the ALJ properly determined that plaintiff's subjective complaints of pain and functional limitations were not wholly credible for the period beginning November 26, 2003. An ALJ is entitled to use ordinary techniques of credibility evaluation. However, because pain testimony is inherently subjective, the ALJ may not reject such testimony unless he makes specific factual findings that support the conclusions. Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

---

[3] We also note that physician's assistant Smerko is not an acceptable medical source whose opinion is entitled to controlling weight. See 20 C.F.R. § 404.1513(a).

- 5 -

1     Here, the ALJ set forth sufficiently specific findings in support of the credibility
2  determination. First, the ALJ found that the medical evidence did not fully support plaintiff's
3  allegations. See 20 C.F.R. § 404.1529(b) (medical evidence must reasonably support
4  subjective claims). Plaintiff's surgeon found her to be neurologically normal by September
5  2003, and two examining and two reviewing physicians made findings indicative of an
6  ability to work. Based on the medical records regarding mental impairments, her testimony
7  that she was disoriented and could not drive for fear she would not be "able to find her way
8  home" was exaggerated. Tr. at 20. Plaintiff reported that she had no limitations in her
9  activities of daily living, Tr. at 18, 151, that she cooked and shopped with her husband's
10 assistance, Tr. at 151, and that she was able to drive. See SSR 95-5p; Batson, 359 F.3d at
11 1196 (daily activities is a permissible factor to consider in evaluating subjective complaints
12 of pain). The ALJ also noted that within a year of her surgery she went back to work.

13    Based on the foregoing, we conclude that the ALJ permissibly found that plaintiff's
14 testimony was not wholly credible.

**V**

16    Finally, plaintiff contends that the ALJ did not properly rely on the vocational expert's
17 (VE) testimony. In particular, plaintiff argues that the ALJ failed to consider the VE's
18 conclusion that if plaintiff's subjective complaints of pain were considered in full, she would
19 be unable to perform her past work or any other work. But as previously discussed, the ALJ
20 properly discounted plaintiff's subjective complaints of pain.

21    Plaintiff also asserts that the ALJ's conclusion that she could perform her past relevant
22 work is inconsistent with the VE's testimony that an IQ of 75 would preclude a person from
23 performing as a bookkeeper. Tr. at 347. But this conclusion is belied by the fact that
24 plaintiff had in fact performed work as a bookkeeper for fifteen years. Moreover, the VE
25 also testified that an IQ score alone is not determinative of functional ability. Tr. at 349.
26 Finally, the ALJ also concluded that even if plaintiff could not return to her past relevant
27 work, that someone with her residual functional capacity could perform other jobs, such as
28 a cashier. The court properly relied on the VE's testimony.

**VI**

Based on the foregoing, we conclude that substantial evidence in the record supports the ALJ's conclusion that plaintiff was not disabled after November 26, 2003.

Therefore, **IT IS ORDERED GRANTING** defendant's cross-motion for summary judgment (doc. 20) and **DENYING** plaintiff's motion for summary judgment (doc. 14). **IT IS FURTHER ORDERED GRANTING** plaintiff's motion to enlarge time (doc. 23).

DATED this 2nd day of March, 2007.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge